**SCIENTIFIC IMAGE CENTER MANAGEMENT, INC. d/b/a Lifestyle Lift, Appellant,**

v.

**Rose M. BREWER, Appellee.**

No. 05–08–00488–CV.

Court of Appeals of Texas, Dallas.

March 31, 2009.

Rehearing Overruled May 21, 2009.

David Michael Walsh IV, Chamblee & Ryan, P.C., Kim A. Lucas, Kyle, Campbell, Mathis & Lucas, LLP, Dallas, TX, for Appellee.

Constance M. Maher, The Maher Law Firm, Arlington, TX, for Appellee.

Before Justices RICHTER, LANG, and MURPHY.

## OPINION

Opinion by Justice MURPHY.

This is the second interlocutory appeal involving motions to dismiss appellee Rose M. Brewer's claims pursuant to chapter 74 of the Texas Civil Practice and Remedies Code. Appellant Scientific Image Center Management, Inc. d/b/a Lifestyle Lift contends in three issues that the trial court erred by finding Brewer's supplemental expert report adequate, and by failing to dismiss the entire case because Brewer's claims all stem from or are inextricably intertwined with the provision of health care by John Standefer, M.D. We reverse the trial court's order denying Lifestyle Lift's motion to dismiss, render judgment dismissing Brewer's claims against Lifestyle Lift with prejudice, and remand to the trial court for determination of reasonable attorney's fees and costs of court incurred by Lifestyle Lift.

### BACKGROUND

Brewer filed claims against Standefer and Lifestyle Lift for what she describes as a "botched face lift." Brewer filed an expert report and curriculum vitae of Carl Warren Adams, M.D. within 120 days of filing her claim pursuant to chapter 74 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). *See* Act of June 2, 2003, 78th Leg. R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended* by Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 2, 2005

Tex. Gen. Laws 1590, 1590 (hereinafter 2003 version).[1] Both Standefer and Lifestyle Lift filed objections and motions to dismiss contending the report was insufficient. *See id.* §§ 74.351(b), (r)(6) (Vernon Supp.2008). The trial court denied Standefer's motion to dismiss in its entirety, finding the report adequate, and granted Brewer a 30–day extension under section 74.351(c) to cure the deficiency as to Lifestyle Lift. *See id.* § 74.351(c).

Standefer filed an interlocutory appeal of the trial court's order denying his motion to dismiss. *Standefer v. Brewer,* 256 S.W.3d 889 (Tex.App.-Dallas 2008, no pet.). Concluding Brewer's tendered expert report did not meet the requirements of subsection 74.351(r)(6), this Court reversed the trial court's order and remanded for further proceedings in light of Brewer's request for a 30–day extension. *Id.* at 893.

While Standefer's interlocutory appeal was pending, Brewer filed a supplemental report from Adams asserting the Lifestyle Lift "technician" practiced and provided health care, and that both Dr. Standefer and the Lifestyle Lift technician failed to meet standards of care required of health care providers. Both Standefer and Lifestyle Lift filed motions to dismiss, again claiming Adams's report was insufficient as to his qualifications, the applicable standard of care, and causation. The record contains no response to the motions to dismiss, although Brewer filed an amended petition prior to the date of the trial court's order denying the motions. After the trial court denied both motions to dis-

1. Brewer's surgery was May 11, 2005. The 2003 version of section 74.351(a) is applicable to causes of action that accrued before September 1, 2005. The 2003 version of section 74.351(a) applicable to this cause of action provides: "In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve ... one or more expert reports ... for each physician or health care provider against whom a liability claim is asserted." Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005).

miss, this second interlocutory appeal followed.

Prior to submission of this appeal, and after reversal of the trial court's first order denying Standefer's motion to dismiss in *Standefer*, Brewer and Standefer agreed to dismiss Standefer's appeal with the stipulation that Adams's supplemental report does not apply to Standefer and nothing is left for the court to decide between Brewer and Standefer. Accordingly, we address only the issues raised by Lifestyle Lift's appeal.

## STANDARD OF REVIEW

▪▪▪ Whether a cause of action is a health care liability claim is a question of law we review de novo. *Lee v. Boothe*, 235 S.W.3d 448, 451 (Tex.App.-Dallas 2007, pet. denied). The trial court's ruling on a motion to dismiss a health care liability claim is reviewed under an abuse of discretion standard. *See Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex.2006) (per curiam). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). We may not substitute our judgment for the trial court's judgment. *See id.* Nor can we find the trial court abused its discretion merely because we would have decided the matter differently. *See Cayton v. Moore*, 224 S.W.3d 440, 444 (Tex.App.-Dallas 2007, no pet.). An abuse of discretion occurs if the trial court clearly failed to analyze and determine the law correctly, or applied the law incorrectly to the facts. *See id.* at 445.

## ANALYSIS

Brewer claims Lifestyle Lift violated the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA) "by failing to inform the public (including Plaintiff) of the risks and complications of the procedure that it promoted through television ads and through other mediums, and by misrepresenting both the quality of the service and the benefits that the consumers would obtain from the procedure." *See* TEX. BUS. & COM.CODE ANN. § 17.46 (Vernon Supp.2008).

Lifestyle Lift contends in its third issue that the trial court erred in not dismissing Brewer's DTPA claims pursuant to chapter 74 of the Texas Civil Practices and Remedies Code because all of her claims stem from or are inextricably intertwined with the provision of health care by Standefer. If chapter 74 applies, Brewer is required to provide an expert report within 120 days of filing her claims. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (2003 version). The report must provide a fair summary of the expert's opinion as to each of the statutory elements of standard of care, breach, and causation applicable to Lifestyle Lift's conduct. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6). Lifestyle Lift contends Adams's supplemental report does not meet the statutory requirements. For the reasons described below, we conclude Brewer's DTPA action is a health care liability claim subject to chapter 74 and that Adams's supplemental report fails to meet the statutory requirements.

▪▪▪ Brewer argues for the first time in this appeal[2] that Lifestyle Lift is not a physician or health care provider against whom health care liability claims may be

---

**2.** In response to Standefer's and Lifestyle Lift's first motions to dismiss in the trial court, Brewer states in a footnote that Lifestyle Lift is not a physician or health care provider, but the issue is not raised or briefed in those papers and is not before us on this appeal.

brought. She asserts Lifestyle Lift provided no health care to Brewer and Brewer's claims do not require finding that she was victim of malpractice. She cites no record supporting her argument. We also have no record of what Brewer argued at the trial court because there is no response and no transcript of proceedings. It appears, however, the trial court treated all claims as health care liability claims in light of the 30–day extension granted for Lifestyle Lift to supplement the report. *See id.* § 74.351(c). In her supplemental expert report tendered pursuant to the 30–day extension, Adams declares Lifestyle Lift to be a health care provider and opines that it "failed to meet the applicable standards of care and harmed Mrs. Brewer by advising a 'simple', but ill-advised surgery and performing a failed facelift which will need future plastic surgical reconstruction." On this record, we treat Lifestyle Lift as a health care provider and address whether Brewer's DTPA claims are in substance health care liability claims.

"Health care" is defined in Chapter 74 as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM.CODE § 74.001(a)(10) (Vernon 2005). A "health care liability claim" is "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in the injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." *Id.* at § 74.001(a)(13). Brewer admits her claims against Standefer are health care liability claims.

The Texas Supreme Court repeatedly has held that plaintiffs cannot, through artful pleading, avoid the strictures now codified in chapter 74 by recasting health care liability claims as other causes of action. *See Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 845 (Tex.2005) (patient's claim for sexual assault by another patient caused by nursing home's negligence in failing to provide adequate supervision and nursing services was health care liability claim); *Murphy v. Russell,* 167 S.W.3d 835, 839 (Tex.2005) (claims doctor sedated patient after expressly representing and warranting he would not, could not be recast as DTPA action); *Garland Community Hosp. v. Rose,* 156 S.W.3d 541, 546 (Tex.2004) (negligent credentialing claims centered on the quality of doctor's treatment were inextricably intertwined with the patient's medical treatment); *Earle v. Ratliff,* 998 S.W.2d 882 (Tex.1999) (alleged representations concerning back surgeries related to treatment and surgeries performed and were not DTPA claims); *Walden v. Jeffery,* 907 S.W.2d 446, 447–48 (Tex.1995) (dentist's failure to provide dentures that fit was a negligence claim, not DTPA claim); *MacGregor Med. Ass'n v. Campbell,* 985 S.W.2d 38, 40–41 (Tex.1995) (clinic's statements in literature that it provided qualified personnel and resources, the best services possible, and emergency service twenty-four hours a day were not actionable under the DTPA when the complaint was negligent treatment); *Gormley v. Stover,* 907 S.W.2d 448, 449–50 (Tex. 1995) (per curiam) (dentist's statements he could perform surgery with no problems, that skin graft would work as well as bone graft, that after surgery patient could wear dentures with no problems, and that patient's pain and numbness would subside following surgery, could not be recast as DTPA action). *But see Sorokolit v.*

*Rhodes,* 889 S.W.2d 239, 242–43 (Tex.1994) (a physician's promise that his patient's appearance following cosmetic surgery would be identical to a specific photograph was actionable under the DTPA). We review Brewer's claims here de novo under the well-developed guidelines established through these decisions.

To determine whether Brewer's claims against Lifestyle Lift meet the statutory definition of a health care liability claim, we focus on the underlying nature of the cause of action and are not bound by the pleadings. *See Rubio,* 185 S.W.3d at 847. We consider the questioned conduct and duties allegedly breached. *Id.* at 851. If the act or omission complained of is an inseparable part of the rendition of medical care, the claim is a health care liability claim and is governed by chapter 74. *Garland,* 156 S.W.3d at 544; *see also Walden,* 907 S.W.2d at 448 (marketing of dentures was inseparable from the profession of dentistry and the medical services provided). One consideration in determining whether a claim is an inseparable part of the rendition of medical or health care services is the need for specialized or expert knowledge. *Garland,* 156 S.W.3d at 544.

Brewer begins in her statement of facts on appeal by claiming she is "the victim of a botched face lift." Although we are not bound by Brewer's pleadings, a review of her allegations is helpful in evaluating whether her allegations against Lifestyle Lift are health care liability claims recast as a DTPA action. Brewer's cause of action against Standefer is for "misrepresentations and failure to adequately disclose the risk and hazards" of the face lift procedure. Brewer admits that her claims against Standefer are health care liability claims and she uses the exact language from the statute to describe those complaints. *See* TEX. CIV. PRAC. & REM.CODE

ANN. § 74.106(a) (Vernon 2005) ("failure ... to disclose or adequately disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider"). Her complaints about Lifestyle Lift are failure to inform Brewer "of the risks and complications of the procedure" and "misrepresenting both the quality of the service and the benefits" that Brewer would obtain. Brewer offers no explanation to try to contrast the phrases "risks and hazards" used for her health care claims, and "risks and complications" used for her DTPA claim. The questioned conduct and the alleged breach of duty of Standefer and Lifestyle Lift both focus on failure to disclose or adequately disclose the risks and hazards, or complications, of the face lift medical procedure.

Brewer's specific DTPA violations asserted against Lifestyle Lift are listed as follows: "representation that its procedure was quick, easy, safe, and effective in eliminating wrinkles and sagging skin along the jaw line and neck"; "[violation of] the express warranty of its ads and promotional materials representing that the procedure would improve [Brewer's] appearance, would eliminate her 'turkey neck,' "; "John Standefer, M.D. who was employed by [Lifestyle Lift] at the time of the incident in question, is not board certified in plastic and reconstructive surgery, nor cosmetic surgery"; and "gross disparity between the consideration Plaintiff paid to Defendant and the value she received." Comparing Brewer's more specific claims against Standefer, she asserts he was employed by Lifestyle Lift and that he and a "technician" employed by Lifestyle Lift made misrepresentations and failed to discuss the "risks and hazards associated with the Lifestyle Lift, or the adverse effects such as infections and disfigurement which would require additional surgery."

■ The only theory on which recovery may be obtained in suits based on the failure to disclose the risks of a medical or surgical procedure is negligence. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.101 (Vernon 2005). The requirements of chapter 74 apply expressly to these cases, commonly referred to as claims for lack of informed consent. *Id; McKinley v. Stripling,* 763 S.W.2d 407, 409–10 (Tex.1989) (issue on proximate causation must be submitted to the jury as in ordinary negligence cases; inquiry is whether reasonable person, not particular plaintiff, would have refused the treatment or procedure had he been fully informed of all inherent risks which would influence his decision). When the medical procedure in question is one identified by the Texas Medical Disclosure Panel under sections 74.102(a) and 74.103(a), failure to disclose the risks and hazards required to be disclosed creates a presumption of negligence. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.106(a)(2). If medical care or surgical procedure is rendered for which the panel has made no determination, expert testimony is required to prove that the condition complained of is a risk inherent in the medical procedure performed and the risk is material in the sense that it could influence a reasonable person's decision to consent to the procedure. *See Barclay v. Campbell,* 704 S.W.2d 8, 9–10 (Tex.1986). Reconstruction and surgical operations of the face and neck are procedures for which identified risks must be disclosed. 25 Tex. Admin. Code § 601.2(i)(2) (2007). The risks required to be disclosed include "worsening or unsatisfactory appearance," "poor healing or skin loss," and "painful or unattractive scarring." *Id.* at §§ 601.2(i)(2)(A), (B)(i), (B)(iii). These risks mirror damages claimed by Brewer.

Brewer asserts as "a proximate result of the incidents made the basis of this lawsuit," she suffered "infections and disfig-urement which will require reconstructive plastic surgery." Her alleged damages are for surgical reconstruction, medical care, physical pain and mental anguish, physical incapacity and impairment, and disfigurement. Brewer cites no discrete causation or damages resulting from "the incidents made the basis" of her lawsuit against both Standefer and Lifestyle Lift. Rather, she joins her DTPA claims against Lifestyle Lift with her chapter 74 claims against Standefer, stating that "but for Defendants' representations that she was an 'excellent candidate' for the procedure" she would not have consented to the face lift. Thus, by Brewer's own allegations, causation and damages are inseparable and her claimed damages are the very risks required to be disclosed for a face lift procedure. *See id.* at §§ 601.2(i)(2)(A), (B)(i), (B)(iii) ("worsening or unsatisfactory appearance," "poor healing or skin loss," and "painful or unattractive scarring").

The essence of Brewer's claims is that Standefer committed malpractice and she would never have consented to the face lift procedure but for the representations and omissions of both Lifestyle Lift and Standefer. Had the surgery been successful, she would have no DTPA claims. In contrast to the facts of *Sorokolit,* where the DTPA claims could survive without any negligence by the doctor, Brewer's causation and damage claims are both inseparable from her health care claims and the conduct giving rise to her DTPA claims. Brewer's action against Lifestyle Lift is dependent on a finding of negligence against Standefer. *See, e.g., Sorokolit,* 889 S.W.2d at 242–43 (DTPA claims did not require a determination of whether a physician failed to meet the standard of medical care). On this record, Brewer may not recast her DTPA claims in an attempt to avoid the requirements of chapter 74. We sustain Lifestyle Lift's third issue.

Having found that Brewer's DTPA claims are health care liability claims and subject to chapter 74, we address issues one and two regarding the adequacy of Adams's supplemental report. In response to issues one and two, Brewer does not dispute that the report fails to provide a "fair summary" of the standards of medical care, breaches, and causation as to Lifestyle Lift's conduct as required under chapter 74. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6). Instead, she admits that "were this a health care liability claim against Lifestyle Lift, rather than a suit under the DTPA, the Court's decision . . . should be the same as its decision regarding the report about Brewer's doctor." After careful analysis, this Court concluded in *Standefer* that Adams's report is inadequate as to Brewer's doctor, Standefer. *Standefer,* 256 S.W.3d at 893. As conceded by Brewer, the supplemental report adds nothing to change that decision. We therefore sustain Lifestyle Lift's first and second issues.

The deadline for Brewer to file an expert report has expired and Brewer used her 30-day extension to submit Adams's supplemental report. For the reasons described above, we therefore reverse the trial court's order denying Lifestyle Lift's motion to dismiss, render judgment dismissing Brewer's claims against Lifestyle Lift with prejudice, and remand to the trial court for determination of reasonable attorney's fees and costs of court incurred by Lifestyle Lift.