

NUMBER 13-10-00392-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**TOXICOLOGY ASSOCIATES, INC.,**             **Appellant,**

**v.**

**SYLVIA AGUIRRE, INDIVIDUALLY AND AS NEXT
FRIEND OF STACY AGUIRRE AND DYLAN AGUIRRE,**    **Appellee.**

---

**On appeal from the 117th District Court
of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Perkes
Memorandum Opinion by Justice Rodriguez**

This is an accelerated, interlocutory appeal from the trial court's order denying appellant Toxicology Associates, Inc.'s motion to dismiss the alleged health-care-liability claim of appellee Sylvia Aguirre, individually and as next friend of Stacy Aguirre and Dylan Aguirre, because she failed to file a timely expert report as required by the Texas Medical

Liability Act (TMLA). *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351(a) (Vernon Supp. 2009) (providing that a plaintiff asserting a "health care liability claim" must serve a medical expert report upon each party's attorney no later than the 120th day after the date the original petition was filed). Sylvia responds that she is not required to provide an expert report because her claim is not a health care liability claim, but instead is based on Toxicology Associates' breach of chapter 164 of the Texas Health and Safety Code and is actionable under the Texas Deceptive Trade Practices Act (DTPA).[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 164.010(1), 164.013 (Vernon 2010). By a single issue, Toxicology Associates contends that Sylvia's health care liability claim must be dismissed because she failed to file a 120-day expert report. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351(a). We reverse the trial court's order, render judgment dismissing Sylvia's claim against Toxicology Associates, and remand to the trial court for determination of reasonable attorneys' fees and court costs incurred by Toxicology Associates.

## I. BACKGROUND[2]

Toxicology Associates obtained permits, pursuant to chapter 466 of the Texas Health and Safety Code, to operate its facilities as narcotic drug treatment programs.

---

[1] Throughout her earlier pleadings, Sylvia referred to her claim as a Texas Deceptive Trade Practices Act (DTPA) claim. During the motion to dismiss proceedings and now on appeal, Sylvia describes her claim as a violation of chapter 164 of the Texas Health and Safety Code, which uses the DTPA as a vehicle for its enforcement. *See* TEX. HEALTH & SAFETY CODE ANN. § 164.010(1) (explaining that a person violates chapter 164 if he expressly advertises the services of a treatment facility through the use of promises or guarantees that cannot be substantiated or that are unsubstantiated claims), § 164.013 (setting out that a person may bring suit under chapter 17 of the Texas Business and Commerce Code for a violation of chapter 164 and a public or private right or remedy prescribed by subchapter E (Deceptive Trade Practices and Consumer Protection) of chapter 17 may be used to enforce chapter 64) (Vernon 2010).

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

2

*See* TEX. HEALTH & SAFETY CODE ANN. §§ 466.021-.024 (Vernon 2010); *see also* TEX. LOC. GOV'T CODE ANN. § 245.001 (Vernon 2005) (defining "permit" broadly as "a license, certificate, approval, registration, consent, permit, contract … or other form of authorization required by law, rule, regulation, or ordinance that a person must obtain to perform an action or initiate, continue, or complete a project for which the permit is sought").   From at least March 3, 2007 to May 27, 2008,[3] John Aguirre, Sylvia's husband and Stacy and Dylan's father, received Methadone treatment at certain Toxicology Associates' locations, one in Corpus Christi, Texas, and another in Houston, Texas, to be weaned off of prescription medications.   According to the medical examiner's report, John's cause of death on June 30, 2008, was opiate toxicity.

On June 2, 2009, Sylvia notified Toxicology Associates that she was asserting a claim, which, at the time, she described as a DTPA claim.   *See* TEX. BUS. & COM. CODE ANN. § 17.505 (Vernon 2002).   That same day, Sylvia filed suit against Toxicology Associates claiming advertising or marketing violations, described as breach of warranties, and alleging that representations made in its literature wrongly induced John to use Toxicology Associates' services.   Toxicology Associates subsequently filed an amended answer describing the lawsuit as one "of alleged medical negligence which the Plaintiffs are attempting to recast as a Deceptive Trade Practices Act case."   On December 15, 2009, Sylvia filed a first amended petition emphasizing the breach of warranty and DTPA language and removing the word "negligence" from the body of her petition.

---

[3] Sylvia stated in her affidavit that John received doses of Methadone from Toxicology Associates at its Corpus Christi, Texas location in 2006.

On December 28, 2009, Toxicology Associates filed a motion to dismiss arguing that Sylvia's claim should be dismissed because no expert report had been filed. The trial court heard the motion on January 24, 2010, and between January 21, 2010 and June 24, 2010, a volley of responses and replies were filed, as allowed by the trial court. On June 24, 2010, the trial court denied Toxicology Associates' motion to dismiss. This accelerated, interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon 2008) (permitting appeal of an interlocutory order denying all or part of a motion to dismiss for failure to file an expert report in a health care liability claim); TEX. R. APP. P. 28.1(a) (stating that appeals from interlocutory orders are accelerated).

## II. STANDARD OF REVIEW

The TMLA requires the dismissal of a suit asserting health care liability claims against a health care provider if the plaintiff does not timely file an expert report pursuant to section 74.351(b) of the Texas Civil Practice and Remedies Code. *Yamada v. Friend*, No. 08-0262, 2010 Tex. LEXIS 1012, at *8 (Tex. Dec. 17, 2010) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351). A party may appeal an order that denies all or part of the relief sought by a 74.351(b) motion. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014(a)(9); 74.351(b).

We ordinarily review a trial court's denial of a motion to dismiss for failure to comply with the expert report requirement for abuse of discretion. *See Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006) (per curiam); *Am. Transitional Care Ctrs. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). However, "whether a claim is a health care liability claim pursuant to section 74.351 is a question of law and is reviewed de novo." *Christus Spohn Health Sys. Corp. v. Sanchez*, 299 S.W.3d 868, 873 (Tex. App.–Corpus Christi

4

2009, pet. denied) (citing *Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 773 (Tex. App.–Corpus Christi 2006, pet. denied)).

## III. DISCUSSION

Toxicology Associates contends generally that dismissal is mandated because Sylvia asserted a health care liability claim and failed to file a 120-day expert report. More specifically, Toxicology Associates argues that Sylvia's claims are health care liability claims because (1) Toxicology Associates is a health care provider, and (2) the nature of her claim concerns the care and treatment rendered to John for narcotic dependency.

## A. HEALTH CARE PROVIDER

Toxicology Associates first asserts that this claim has been brought against it as a health care provider. A "health care liability claim" is a cause of action against a health care provider for "treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (Vernon 2005). The TMLA provides that a health care provider is "any person, … corporation, facility or institution duly licensed, certified, registered or chartered by the State of Texas to provide health care.…" *Id.* § 74.001(a)(12)(A) (Vernon 2005). "Health care" is defined as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10) (Vernon 2005).

5

In this case, each Toxicology Associates facility obtained a permit to treat narcotic addiction. *See* TEX. HEALTH & SAFETY CODE ANN. § 466.024. Under section 466, a "facility" is defined, in relevant part, as "an outpatient clinic" and "any other location in which a structured narcotic dependency program is conducted." *Id.* § 466.002(6) (Vernon 2010). In addition, "[t]reatment of narcotic addiction by permitted treatment programs is recognized as a specialty chemical dependency treatment area using the medical model." *Id.* § 466.001(b) (Vernon 2010).

Toxicology Associates asserts that it is a health care provider—treating narcotic addiction through the use of "the medical model." *See id.* It argues that the permit obtained by each facility evidences the fact that Toxicology Associates is engaged in the treatment of patients and that it provides health care to its patients, one of whom was John Aguirre. It also asserts that it is a health care provider as evidenced by the records it produced in this case, records which show John was seen by physicians, counselors, and nurses at Toxicology Associates' clinics and which it identifies as John's medical records. And, the Houston Court of Appeals has held that an inpatient drug and alcohol treatment center licensed under chapter 464 of the health and safety code is a health care provider for the purposes of chapter 74. *See Christus Health v. Beal*, 240 S.W.3d 282, 287 (Tex. App.–Houston [1st Dist.] 2007, no pet.).

We find Toxicology Associates' arguments and the guidance provided by *Christus Health* persuasive. However, we need not reach its health-care-provider argument because Sylvia does not dispute Toxicology Associates' status as a health care provider for the purposes of asserting a health care liability claim in this case and did not do so in the trial court. Rather, on appeal, Sylvia responds only that Toxicology Associates is a

6

chemical dependency facility as prescribed by section 462.001 of the health and safety code and, as such, is subject to section 164.010's marketing provisions and any violations thereof. *See* TEX. HEALTH & SAFETY CODE ANN. § 164.010; *id.* § 462.001 (Vernon 2010). Sylvia does not challenge Toxicology Associates' position that John was provided treatment by health care providers at its clinics or that the facility is a health care provider. Therefore, on this record, we treat Toxicology Associates, a facility permitted under chapter 466, as a health care provider. *See id.* §§ 466.021-.024; TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A).

## B. NATURE OF THE CLAIM

Toxicology Associates also argues that Sylvia's claim is a health care liability claim because the nature of her claim concerns the care and treatment rendered to John. We agree.

A claim is a health care liability claim governed by chapter 74 if it alleges a breach of accepted standards of health care or if the claim is inseparable from the rendition of health care. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010) (plurality op.); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005); *see, e.g., Earle v. Ratliff*, 998 S.W.2d 882, 885, 893 (Tex. 1999) (setting out that a surgeon's statements that a patient needed surgery, would get "95% better" and able to return to work, and that devices being implanted were safe and permanent could not be brought under the DTPA, but were medical negligence claims); *MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 40-41 (Tex. 1998) (per curiam) (holding that a provider's failure to advise a patient of possible complications in his condition and a misrepresentation that the patient "was medically fine" indicated a cause of action for

medical malpractice); *Gormley v. Stover*, 907 S.W.2d 448, 449-50 (Tex. 1995) (per curiam) (concluding that representations that a surgeon "could perform the surgery with no problems, that a skin graft would work as well as a bone graft, that [the patient's dentures] would fit well and . . . she would have no problems wearing [them]" all had to do with whether surgeon's selection of surgical procedure and performance of it met standard of care for dentists in such circumstances); *Walden v. Jeffery*, 907 S.W.2d 446, 448 (Tex. 1995) (per curiam) (deciding that the marketing of dentures was inseparable from the profession of dentistry and the medical services provided and, therefore, was "an inseparable part of [the defendant's] rendition of medical services"; thus, the plaintiff's claim was a health care liability claim subject to the requirements of chapter 74).

"Whether a claim is a health care liability claim depends on the underlying nature of the claim being made." *Yamada*, 2010 Tex. LEXIS 1012, at *9 (citing *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004)). In determining a claim's underlying nature, we consider the duties allegedly breached as well as the alleged wrongful conduct, *see Rubio*, 185 S.W.3d at 851, looking to the factual allegations to determine the gravamen of the complaint and not being bound by the form of the pleading or how complaints are labeled. *See id*; *Sci. Image Ctr. Mgmt. v. Brewer*, 282 S.W.3d 233, 237-38 (Tex. App.–Dallas 2009, pet. denied) ("The Texas Supreme Court repeatedly has held that plaintiffs cannot, through artful pleading, avoid the strictures … [of] chapter 74 by recasting health care liability claims as other causes of action[,]" however, while not being "bound by Brewer's pleadings, a review of her allegations [in her statement of facts on appeal] is helpful in evaluating whether her allegations … are health care liability claims recast as a DTPA action.") (citations omitted); *see also Yamada*, 2010 Tex. LEXIS

8

1012, at *2, 13 (concluding that claims against a health care provider based on one set of underlying facts cannot be brought as both health care liability claims subject to the TMLA and ordinary negligence claims not subject to the TMLA because the TMLA and its procedures and limitations would be effectively negated); *but see Sorokolit v. Rhodes*, 889 S.W.2d 239, 242-43 (Tex. 1994) (concluding that a physician's explicit promise that his patient's appearance following cosmetic surgery would be identical to a specific magazine photograph of a nude model did not involve negligence and was, therefore, actionable under the DTPA).

In her petition, Sylvia claimed that the following statements found in Toxicology Associates' literature induced John to use the services of the facility: (1) "Methadone taken under a doctor's care causes no harm to any of your body organs and does not change your ability to think clearly"; (2) "Properly prescribed Methadone is not intoxicating and does not create euphoria, sedation[,] or an analgesic effect"; and (3) "Methadone is medically safe." She further asserted that these alleged warranties were breached because "none of the results guaranteed were delivered. The results guaranteed in [Toxicology Associates'] literature did not occur." In addition, Sylvia asserted that Toxicology Associates "wrongfully disseminat[ed] information concerning the toxicity of Methadone," and "wrongfully advis[ed] the Deceased concerning the use of Methadone."[4] Sylvia asserted that these allegedly unlawful acts and practices were a producing cause of damages and, without identifying specific damages, claimed that the

---

[4] In her original petition, Sylvia claimed that Toxicology Associates was negligent when it "wrongfully disseminat[ed] information concerning the toxicity of Methadone," and "wrongfully advis[ed John] concerning the use of Methadone." In her amended petition, she asserted that these acts violated the DTPA.

9

suit was to recover the amount of money which would fairly and reasonably compensate her for those damages.

In her pleadings, Sylvia also asserted, however, that John's cause of death was "Opiate (Methadone) Toxicity"[5] and claimed the following:

> On multiple occasions, as shown in [Toxicology Associates'] internal records, [John] stated to [Toxicology Associates] that he was not living a healthier and better life as was guaranteed. His ability to think clearly was also impared [sic] and he did feel "high" or "drugged." At one point [Toxicology Associates] was forced to call 911 to transport John … to the hospital due to his "drugged" state.

According to her petition, John asked to be "'weaned off' of [M]ethadone in order to function in his day to day life," which "had gotten worse, not better since being on [Toxicology Associates'] [M]ethadone." Sylvia claimed, in her petition, that Toxicology Associates again "warranted to John … 'Methadone taken under a doctor's care causes no harm to *any* of your body organs and does not change your ability to think clearly.'" Sylvia alleged that Toxicology Associates "never decreased his dosage in the face of failed guarantees, but rather, continued with the same 190 milligram dosage, daily until" his death. She also asserted that Mr. Aguirre's "death resulted form [sic] the Defendants willful act or omission, which intitles [sic] [him] to exemplary damages."

In addition to the above-mentioned pleadings, Sylvia's attorney sent a notice letter to Toxicology Associates. The letter appears in the record as an exhibit to one of Sylvia's responses to Toxicology Associates' motion to dismiss. While referencing statements made in the literature and their inducement effect, the following portions of the letter referring to Toxicology Associates' negligence are also helpful in our evaluation:

---

[5] Sylvia's original petition set out that "[t]he cause of death was [o]piate [t]oxicity, completely attributable to the build up [sic] of Methadone in [John's] system."

10

Please be advised that we represent the widow and children of John Aguirre. Mr. Aguirre was a patient at your clinic. He was in treatment at your establishment for two years.…

After consulting Mr. Aguirre's medical records as provided by your clinic, he exhibited all the intoxicating effects previously mentioned.… [U]p until his time of death he was administered 190 milligrams of Methadone daily, with complete disregard to his symptoms [and his request to be weaned off of Methadone].

Mr. Aguirre died as a result of the "care" provided by your clinic. His cause of death was Opiate Toxicity. The only Opiate in his system at the time was Methadone as provided by your clinic, under your care.… As you can imagine, the damages caused by your actions are immense. Please present this letter to your insurance carrier. If you do not have insurance please contact our offices that we may address this matter, and make whole Mr. Aguirre's widow and children. This letter is sent in adherence to the Texas Deceptive Trade Practices Act.

Furthermore, it was not until Sylvia filed her response to Toxicology Associates' motion to dismiss that she asserted the claim that she now argues on appeal: that Toxicology Associates violated chapter 164 through its misleading marketing practices. *See* TEX. HEALTH & SAFETY CODE ANN. § 164.010(1). On appeal, Sylvia argues that her claim against Toxicology Associates is for its violation of the Treatment Facilities Marketing and Admission Practices Act found in chapter 164 of the health and safety code, a claim that can be brought through the DTPA.[6] *See id.* §§ 164.010(1), 164.013. Sylvia specifically refers us to section 164.010 which provides, in relevant part, the following: "It is a violation of this chapter, in connection with the marketing of mental health services, for a person to: (1) advertise, expressly or impliedly, the services of a treatment facility through the use of (A) promises of cure or guarantees of treatment results that cannot be substantiated; or (B) any unsubstantiated claims .…" *Id.* §

---

[6] Also, in response to Toxicology Associates' motion to dismiss, Sylvia asserted that Toxicology Associates failed to disclose material facts concerning John's purchase of a product and that Toxicology Associates' "brochure does not state that Methadone itself is addictive."

11

164.010(1). This language, however, is absent from her petition. Rather, the factual allegations in Sylvia's petition involve "undelivered" DTPA warranties that allegedly induced John to use services provided by Toxicology Associates and the wrongful dissemination of information and wrongful advice given by Toxicology Associates concerning the toxicity of Methadone.

Nonetheless, Sylvia now argues that the alleged breach was not in the standard of care provided by Toxicology Associates, but in its marketing practices. *See id.* Sylvia contends that the duties imposed in chapter 164 are not related to the care provided to each patient, but to the marketing and advertising used to induce consumers to utilize its services. We agree that, given certain factual allegations, a party's claim that a mental health facility and a chemical dependency treatment facility violated section 164 of the health and safety code could survive. *See id.* § 164.002 (Vernon 2010) ("The purpose of this chapter is to safeguard the public against fraud, deceit, and misleading marketing practices and to foster and encourage competition and fair dealing by mental health facilities and chemical dependency treatment facilities by prohibiting or restricting practices by which the public has been injured in connection with the marketing and advertising of mental health services and the admission of patients."). However, we do not agree that the facts and claims alleged in this case support such a cause of action.

The basis for Sylvia's claim lies in her allegations of negligence by Toxicology Associates, negligence in the care and advice provided to John as part of his treatment at its clinics in Houston and Corpus Christi. In her notice letter, Sylvia acknowledged that John died as a result of the "care" provided at Toxicology Associates' clinic. Sylvia sets out in her petition, as well as in other documents, that the personnel at the facilities failed

12

to listen to John when he complained about not living a healthier and better life and about feeling "high" or "drugged" while on Methadone and asked to be weaned off of Methadone. Sylvia alleges that Toxicology Associates "never decreased his dosage in the face of failed guarantees, but rather, continued with the same 190 milligram dosage, daily until" his death. And it is undisputed that the cause of death was opiate toxicity. These allegations and undisputed facts support a claim that John's death arose out of the allegedly wrongful manner in which Toxicology Associates conducted John's Methadone treatment.

Moreover, although the complained-of statements in the literature may have induced John to participate in Toxicology Associates' Methadone treatment program, Sylvia's allegations do not concern damages caused by Toxicology Associates' marketing practices that allegedly made unsubstantiated claims through its literature. Sylvia cites no damages related to her marketing-violation claim, such as the cost of John's treatment. Rather, her allegations concern damages allegedly caused by Toxicology Associates' negligent treatment of John's prescription drug addiction. This is supported by her comment in the notice letter that the damages caused by Toxicology Associates' actions are "immense."

Sylvia's claim derives from Toxicology Associates' alleged negligent actions that were inextricably related to its professional duty of treating John's drug addiction with Methadone, a claim that is inseparable from the rendition of health care. *See Marks*, 319 S.W.3d at 664. The claim also derives from Toxicology Associates' alleged breach of accepted standards of health care. *See id.* Regardless of what Sylvia would like this case to be, it is a claim that the treatment facility departed from an accepted health care

standard. Sylvia's claim is dependent on a finding of negligence against Toxicology Associates—a determination of whether Toxicology Associates, through its counselors, nurses, or physicians, failed to meet the required standard of health care. Therefore, in our de novo review, we conclude that the essence of Sylvia's claims is that Toxicology Associates committed medical negligence, and Sylvia may not recast her claims as violations of chapter 164 in an attempt to avoid the requirements of chapter 74.

Because it is undisputed that Toxicology Associates is a health care provider and we have concluded that the nature of Sylvia's claim concerns the care and treatment Toxicology Associates rendered to John, her failure to file a 120-day expert report as required by the TMLA mandates dismissal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. We sustain Toxicology Associates' sole issue.[7]

### IV. CONCLUSION

Accordingly, we reverse the trial court's order denying Toxicology Associates' motion to dismiss, render judgment dismissing Sylvia's claims against Toxicology Associates with prejudice, and remand to the trial court for determination of reasonable attorneys' fees and costs of court incurred by Toxicology Associates.


NELDA V. RODRIGUEZ
Justice

Delivered and filed the 31st
day of January, 2011.

---

[7] By a second sub-issue, Toxicology Associates argues that Sylvia's claims cannot be asserted under the DTPA because (1) the TMLA prohibits DTPA claims against health care providers and (2) the DTPA itself excludes a lawsuit of this nature—a lawsuit involving personal injury, survival, and wrongful death claims. Having concluded that Sylvia's claims are health-care-liability claims and subject to chapter 74, we need not address Toxicology Associates' remaining sub-issue as it is not dispositive of this appeal. *See* TEX. R. APP. P. 47.1.