Rose M. BREWER, Appellant,

v.

John STANDEFER, M.D. and Scientific Image Center Management, Inc. d/b/a Lifestyle Lift, Appellees.

No. 05–09–01524–CV.

Court of Appeals of Texas, Dallas.

April 19, 2012.

**328**

Constance M. Maher, The Maher Law Firm, Arlington, TX, for Appellant.

Jeffrey W. Ryan, Ryan D. Wozny, David M. Walsh, IV, Chamblee & Ryan, P.C., John B. Kyle, Kim A. Lucas, Kyle, Campbell, Mathis & Lucas, LLP, Dallas, TX, for Appellee.

Before Justices MORRIS, FRANCIS, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

This is the third appeal involving Rose M. Brewer's claims against John Standefer, M.D. and Scientific Image Center Management, Inc. d/b/a Lifestyle Lift concerning an alleged "botched" face-lift. In two issues, Brewer contends that the trial court erred by ordering Brewer to pay attorney's fees to Scientific Image and by dismissing Brewer's health care liability claim against Standefer. We affirm.

### BACKGROUND

Brewer filed a health care liability claim against Standefer alleging he failed to obtain her informed consent to perform a cosmetic face-lift procedure. In the same case, Brewer asserted a Deceptive Trade Practices—Consumer Protection Act (DTPA) claim against Scientific Image alleging that it failed to inform the public of the risks of the procedure and for misrepresenting the benefits of the procedure and the services consumers receive. See TEX. BUS. & COM.CODE ANN. § 17.46 (West 2011).

Within 120 days of filing her claim, Brewer served an expert report and curriculum vitae of Carl Warren Adams, M.D. pursuant to chapter 74 of the Texas Civil Practice and Remedies Code. See TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (West 2011).[1] Both Standefer and Scientific Image objected that the expert report was deficient and filed motions to dismiss. The trial court overruled Standefer's and Scientific Image's objections, denied both motions to dismiss, and granted Brewer's "Request for a thirty-(30)-day extension of time to include their expert's opinions regarding Defendant Scientific Image Center Management, Inc., d/b/a Lifestyle Lift" pursuant to § 74.351(c). See TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c).

Standefer filed the first interlocutory appeal, arguing that the report was deficient as to him and challenging the trial court's order denying his motion to dismiss. While that appeal was pending, Brewer served a supplemental expert report. It stated that a Lifestyle Lift "technician" provided health care and that both Standefer and the Lifestyle Lift "technician" failed to meet the applicable standards of

---

1. After Brewer's cause of action accrued on May 11, 2005, the date of her surgery, the legislature amended section 74.351. See Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, amended by Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590. The prior law applies to Brewer's claim. The prior version required a claimant to serve an expert report within 120 days of filing the "claim." The amended statute requires a claimant to serve an expert report within 120 days of filing the "original petition." Because the amendment does not affect our analysis, we cite the current version of the statute for ease of reference. See Omaha Healthcare Ctr., L.L.C. v. Johnson, 344 S.W.3d 392, 393 n. 1 (Tex.2011); Scientific Image Ctr. Mgmt., Inc. v. Brewer, 282 S.W.3d 233, 235 n. 1 (Tex.App.-Dallas 2009, pet. denied).

care for health care providers. Standefer and Scientific Image objected that this supplemental report was also deficient and filed motions to dismiss. The trial court denied both motions. While the first appeal was pending, Standefer and Scientific Image both filed the second interlocutory appeal, arguing that the trial court erred in denying their motions to dismiss because the supplemental report was deficient. Standefer and Brewer agreed to dismiss Standefer from the second appeal because Adams's supplemental expert report—which was the subject of the second appeal—"[did] not apply to Dr. Standefer, [would] not be used against Dr. Standefer, and [would] not constitute a waiver if Dr. Standefer [did] not pursue [the] appeal." As a result, Scientific Image was the only appellant in the second appeal.

In the first appeal, *Standefer v. Brewer*, 256 S.W.3d 889, 893 (Tex.App.-Dallas 2008, no pet.), this Court concluded that Adam's original expert report as to Standefer was deficient, reversed the trial court's order denying Standefer's motion to dismiss, and remanded for the trial court to consider Brewer's request for a 30-day extension to correct the deficient report.

While the second appeal was pending, Brewer served a second supplemental expert report by Steven Havard, M.D. Standefer objected that Havard's report—whether read alone or in combination with Adams's first report—was deficient and filed a motion to dismiss. The trial court granted Standefer's motion to dismiss and awarded Standefer attorney's fees and costs of court.

We decided the second appeal in *Scientific Image*, 282 S.W.3d at 237–39, where we concluded that, based on the record then before the Court, (1) Scientific Image is a health care provider, and (2) Brewer's DTPA claims are health care liability claims subject to the expert report requirements of chapter 74. We also concluded that Brewer's report was deficient as to Scientific Image, reversed the trial court's order denying Scientific Image's motion to dismiss, rendered judgment dismissing Brewer's claims against Scientific Image with prejudice, and remanded "for determination of reasonable attorney's fees and costs of court." *Scientific Image*, 282 S.W.3d at 240.

On remand from the second appeal, the trial court awarded attorney's fees and costs of court to Scientific Image. This third appeal followed, challenging the trial court's award of attorneys fees and costs as to the claim against Scientific Image and its order dismissing claims against Standefer.

## STANDARD OF REVIEW

The standard of review of a trial court's ruling on a motion to dismiss a health care liability claim and on an award of attorney's fees for a deficient expert report is an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex.2001) (discussing former article 4590i); *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 490 (Tex.App.-Dallas 2010, no pet.). *See also Garcia v. Gomez*, 286 S.W.3d 445, 448 (Tex.App.-Corpus Christi 2008), *aff'd in part and rev'd in part on other grounds*, 319 S.W.3d 638 (Tex.2010) (trial court's ruling on attorney's fees in connection with motion to dismiss under section 74.351 reviewed for abuse of discretion). A trial court abuses its discretion if it acts arbitrarily and unreasonably without reference to any guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex.2010). A trial court does not abuse its discretion if it determines a matter within its discretionary authority differently than an appellate court might have decided the matter in a similar circumstance. *Downer v. Aqua-*

*marine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985). But the trial court does not have discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

## ATTORNEY'S FEES

In Brewer's first issue, she argues that this Court cannot constitutionally award Scientific Image attorney's fees because Brewer argued and Scientific Image admitted to the trial court that Scientific Image is not a health care provider under chapter 74. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(12)(A) (West Supp.2011).[2] Brewer also contends that Scientific Image did not file a motion requesting attorney's fees, and section 74.351(b) directs a trial court to award attorney's fees upon dismissing a health care liability claim for failure to file a sufficient expert report "on the motion of the affected physician or health care provider." *Id.* § 74.351(b). In addition, Brewer argues that her claims against Scientific Image are not medical liability claims, but rather claims for deceptive trade practices, and that the Court should reinstate her deceptive trade practices action against Scientific Image.

Scientific Image responds, arguing that this Court decided all of the issues Brewer raises here when it decided *Scientific Image,* 282 S.W.3d 233, or that Brewer waived the issues because she did not raise them in the trial court or in the prior appeal. It contends that, because this Court previously determined that Scientific Image is a health care provider and that Brewer's claims against Scientific Image are health care liability claims, Brewer cannot raise these issues before the trial court on remand or before this Court in

this appeal. And Scientific Image contends that Brewer does not contest the only pending issue—the amount of attorney's fees and costs awarded by the trial court—and that the trial court did not abuse its discretion in making the award. As a result, Scientific Image argues, this Court should affirm the trial court's award of attorney's fees and costs of court. We agree.

In *Scientific Image,* we concluded that, based on the record then before this Court in that appeal, (1) Scientific Image is a health care provider; (2) the claims that Brewer asserted against Scientific Image are health care liability claims; and (3) Adams's supplemental expert report was deficient as to Scientific Image. 282 S.W.3d at 237–40. We dismissed Brewer's claims against Scientific Image with prejudice and remanded solely for the trial court to determine Scientific Image's reasonable attorney's fees and costs of court. *Id.* at 240. We do not revisit those issues in this subsequent appeal. *See Cessna Aircraft Co. v. Aircraft Network, L.L.C.,* 345 S.W.3d 139, 149 (Tex.App.-Dallas 2011, no pet.) ("A reviewing court does not again pass upon any matter presented to, directly passed upon, or in effect disposed of on an earlier appeal to that court.") And Brewer cannot relitigate the questions decided in *Scientific Image* by recharacterizing her argument.

 Brewer also argues that Scientific Image cannot recover attorney's fees because it did not file a motion requesting attorney's fees. We disagree. Scientific Image's motion to dismiss included its request for all relief to which it is entitled, its brief in the second appeal requested remand for the limited purpose of award-

---

**2.** The legislature amended section 74.001(a)(12)(A) in 2011. But the amendment does not affect our analysis in this case.

We cite the current version of the statute for ease of reference.

ing attorney's fees and costs, and we ordered remand for consideration of the award of attorneys fees and costs. And "[a]ttorney's fees and costs of court are mandatory under [chapter 74] when a claimant fails to file an expert report on a health care liability claim." *Vanderwerff v. Beathard,* 239 S.W.3d 406, 409 (Tex. App.-Dallas 2007, no pet.). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b); *Hernandez v. Ebrom,* 289 S.W.3d 316, 318 (Tex.2009) ("If a timely and sufficient report is not served, the trial court must award the provider its attorney's fees and costs and dismiss the case with prejudice."). Under these circumstances, the trial court did not abuse its discretion in awarding attorney's fees and costs of court to Scientific Image.

Consequently, the issue before us is whether the award of attorney's fees and costs of court by the trial court is proper. Brewer does not contend that the amount of the trial court's award is not proper. As a result, we resolve Brewer's first issue against her. We affirm the trial court's award of attorney's fees and costs of court to Scientific Image.

### SUFFICIENCY OF EXPERT REPORTS

In Brewer's second issue, she contends that the trial court erred by dismissing the claims against Standefer because Adams's and Havard's expert reports are deficient under chapter 74 as to Standefer. Brewer argues (1) the trial court applied an incorrect causation standard and (2) Adams's and Havard's expert reports satisfy the chapter 74 requirements when read together.

### Expert Opinion Requirements under Chapter 74

██ Chapter 74 requires a claimant asserting a health care liability claim to serve one or more expert reports on each party no later than 120 days after the filing of the original petition. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). A report meets the requirements of chapter 74 if it represents "an objective good faith effort to comply with the definition of an expert report." *See id.* § 74.351(*l*). Section 74.351(r)(6) defines an expert report as:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

An expert report that omits any of these statutory requirements does not represent a good faith effort. *Palacios,* 46 S.W.3d at 879; *Baylor Univ. Med. Ctr. v. Biggs,* 237 S.W.3d 909, 917 (Tex.App.-Dallas 2007, pet. denied). "[I]f it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report[,]" a "court shall grant a motion challenging the adequacy of [the] expert report[.]" TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*).

██ The expert report must provide enough information to accomplish two purposes: it must inform the defendant of the specific conduct the plaintiff calls into question, and it must provide a basis for the trial judge to determine that the claims have merit. *Palacios,* 46 S.W.3d at 879; *Whisenant v. Arnett,* 339 S.W.3d 920, 923 (Tex.App.-Dallas 2011, no pet.). The " 'report cannot merely state the expert's conclusions about these elements,' but 'the expert must explain the basis of his statements to link his conclusions to the facts.' " *Jelinek,* 328 S.W.3d at 539 (internal quotation marks omitted) (quoting *Bowie Mem'l*

*Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002) (per curiam)). If a report only includes the expert's conclusions about the standard of care, breach, and causation, it does not fulfill the report's two purposes and does not constitute a good faith effort. *Id.; Palacios,* 46 S.W.3d at 879. To determine whether a report meets the statutory requirements, the trial court should look no further than the four corners of the document. *Palacios,* 46 S.W.3d at 878; *Wright,* 79 S.W.3d at 52. A claimant may serve "reports of separate experts" to address "different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(i).

**Standard to Meet Causation Requirement**

Brewer contends that the trial court erred by granting the motion to dismiss because the reports adequately addressed causation. She argues that Texas Civil Practice and Remedies Code § 74.101 states the applicable standard: whether disclosure of the risks and hazards "could have influenced a reasonable person in making a decision to give or withhold consent." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.101 (West 2011). Standefer argues that Brewer's proposed standard is incorrect based on Texas Supreme Court precedent and this Court's prior opinion in the first appeal. Standefer also argues that, in light of our opinion in *Standefer,* the law of the case doctrine bars Brewer from relitigating the issue. We agree with Standefer.

In a health care liability claim based on a failure to obtain informed consent—also known as a claim based on the failure to adequately disclose the risks of treatment—"the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." TEX. CIV. PRAC. & REM.CODE ANN. § 74.101. *See McKinley v. Stripling,* 763 S.W.2d 407, 409 (Tex.1989) (discussing former article 4590i) ("It is clear from the language of this statute that an action alleging a physician's failure to obtain a patient's informed consent is a suit based on negligence."); *Standefer,* 256 S.W.3d at 891.

Additionally, "[t]he inquiry must be whether a reasonable person, not a particular plaintiff, would have refused the treatment or procedure had he been fully informed of all inherent risks which would influence his decision.... Only in this way may a plaintiff establish that the failure to obtain informed consent was a proximate cause of his injuries." *McKinley,* 763 S.W.2d at 410 (citations omitted). In *McKinley,* the Texas Supreme Court rejected arguments that the statute does not require a finding of proximate cause: "An issue on proximate causation must be submitted as in ordinary negligence cases so the jury may determine whether any breach of duty caused the injuries suffered. To hold otherwise would amount to an imposition of strict liability wherein a failure to warn and an undesirable surgical result would automatically create liability on the doctor." *McKinley,* 763 S.W.2d at 409. And, as we stated previously in this case, "[p]roximate cause in lack of informed consent cases requires proof that had the risk been disclosed, a reasonable person in the same or similar circumstances would have refused the treatment or procedure, and the injury complained of was caused in fact by the undisclosed risk." *Standefer,* 256 S.W.3d at 892 (citing *McKinley,* 763 S.W.2d at 410; *Greene v. Thiet,* 846 S.W.2d 26, 31, 36–37 (Tex.App.-San Antonio 1992, writ denied)).

We apply these standards to determine whether the trial court abused its discretion by concluding that Adams's first expert report and Havard's expert report were deficient as to Standefer.[3] We begin by analyzing whether the two reports together satisfy the statutory causation requirement because our conclusion about that issue is dispositive.[4]

**Causation Opinions of Adams and Havard**

■■■ We determine whether the causation opinions of Adams and Havard are sufficient by considering them in the context of the entire reports.[5] *Whisenant*, 339 S.W.3d at 923; *Bakhtari*, 317 S.W.3d at 496.

Adams's expert report reads in relevant part:

*Commentary and Summary Statement*

From the available medical records and attached legal documentation, it is my medical opinion that Ms. Brewer fell victim to, what is rampant in our surgical field, of commercial surgery. She was not a surgical candidate for the operation, nor was she properly advised by the surgeon of the potential risks and complications of the procedure. A history and physical, preoperative evaluation and consent by a "surgical technician" are not the standards of care, nor is the fleecing of an uninformed patient an acceptable standard in the practice of medicine and surgery. Therefore, based

upon the medical records I have reviewed, the actions of Dr. Standefer ... failed to meet the standard of care and harmed Ms. Brewer by advising "a simple" but failed facelift.

We already determined in *Standefer*, 256 S.W.3d at 893, that Adams's report does not constitute a good faith effort to furnish a fair summary of an expert's opinion concerning causation as to Standefer. We concluded:

The report does not show how the alleged negligence in failing to disclose the risk of failure or possible need for further reconstructive surgery caused Brewer's injury or damage. Specifically, the report does not discuss whether a reasonable person would have declined the procedure had they been fully informed of the risks required to be disclosed. Statements that Brewer was not a surgical candidate for the procedure or that she was harmed by being advised to undergo "a simple" but failed face-lift are not sufficient to show causation in a lack of informed consent case. *Id.* (citations and footnote omitted).

After we decided *Standefer*, Brewer served Havard's report. Consequently, we determine here whether Havard's expert report—either read alone or in combination with Adams's report—satisfies the causation requirement. Havard's report reads in relevant part:

[T]he surgeon had the duty to disclose the risks and complications inherent in

---

**3.** The relevant expert reports concerning Standefer—and the reports on which he based his motion to dismiss that is the basis for this appeal—are Adams's first report and Havard's report. As discussed above, Standefer and Brewer agreed to dismiss Standefer's second appeal concerning Adams's supplemental expert report with the understanding that Adams's supplemental report does not apply to Standefer.

**4.** Under section 74.351(i), we may read the reports of Adams and Havard together to determine whether Brewer has satisfied the expert report requirements.

**5.** In *Standefer,* we concluded that Adams's report does not meet the causation requirement. 256 S.W.3d at 893. But we evaluate Adams's report here to determine whether his report and Havard's report together meet the causation requirement.

the *Lifestyle Lift* operation. Having failed to disclose the risks and complications to a competent patient, the surgeon did not obtain Mrs. Brewer's informed consent in a manner consistent with the standards of care of the medical community. If provided appropriate informed consent, Mrs. Brewer or any patient may have reasonably refused the operation based on risk to benefit assessment.

Brewer argues that it satisfies the causation requirement and emphasizes Havard's last sentence: "[i]f provided appropriate informed consent, . . . any patient may have reasonably refused the operation based on risk to benefit assessment."

Standefer argues that Havard's report addresses causation only in the last sentence, and that Havard's statement in this sentence does not satisfy the first causation element because it does not state that a reasonable person would have refused the procedure given proper disclosure. Standefer also contends that Havard's report fails to explain why a reasonable person would refuse the procedure. In addition, Standefer argues that Havard's report does not even discuss the second element of causation: how the alleged failure to disclose inherent risks of the procedure resulted in harm to Brewer. And Standefer argues that, even when read together, Adams's and Havard's reports do not represent a good faith effort to provide a fair summary of the experts' opinion on causation.

We agree with Standefer. Havard's conclusion that "[i]f provided appropriate informed consent, Mrs. Brewer or any patient may have reasonably refused the operation based on risk to benefit assessment" does not establish the first element of causation: that a reasonable person in the same or similar circumstances would have declined the procedure had the risks

been disclosed. *See McKinley*, 763 S.W.2d at 410; *Standefer*, 256 S.W.3d at 891–93. And in *Standefer*, we previously concluded that Adams's opinion also fails to meet this first requirement. 256 S.W.3d at 893.

■ We also conclude that Havard's report does not link the alleged failure to obtain informed consent to Brewer's alleged harm. Havard's report does not discuss any harm that Brewer suffered and does not state how Standefer's alleged failure to inform caused harm to Brewer. And Adams's report does not explain how Standefer's purported failure to obtain Brewer's informed consent resulted in harm to Brewer. "An expert cannot simply opine that the breach caused the injury. Stated so briefly, the report fails the second *Palacios* element—it does not give the trial court any reasonable basis for concluding that the lawsuit has merit." *Jelinek*, 328 S.W.3d at 539 (citing *Palacios*, 46 S.W.3d at 879). "Instead, the expert must go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Id.* at 539–40. *See also Wright*, 79 S.W.3d at 53 (when a report lacks information linking an expert's conclusion to an alleged breach, "the trial court could have reasonably determined that the report was conclusory"; a "conclusory report does not meet the Act's requirements, because it does not satisfy the *Palacios* test" (citing *Palacios*, 46 S.W.3d at 879)); *Biggs*, 237 S.W.3d at 923 (failure to connect alleged breach by doctor to harm suffered does not meet causation requirement).

In summary, we conclude that the trial court could have reasonably determined that Brewer's expert reports do not represent an objective good faith effort to satisfy the statutory causation requirements. We also conclude that the trial court did not abuse its discretion when it granted Standefer's motion to dismiss based on

Brewer's failure to satisfy the expert report requirements under chapter 74. Consequently, we do not need to address Brewer's other arguments concerning the sufficiency of her expert reports. We resolve Brewer's second issue against her.

CONCLUSION

We resolve both of Brewer's issues against her and affirm the trial court's judgment.