**Affirmed and Majority and Concurring Opinions filed June 30, 2016.**



In The

# 𝕵𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-15-00373-CR

### AARON GONZALES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1429774**

## M A J O R I T Y   O P I N I O N

Appellant Aaron Gonzales appeals from his conviction for possession of a controlled substance. Appellant presents two issues: (1) that the trial court erred in denying his motion for mistrial; and (2) that trial counsel was ineffective. We affirm.

### Factual and Procedural Background

On the morning of May 26, 2014, Jonathan Vacek witnessed appellant

Aaron Gonzales attempting to open the doors of several cars in the Food Town parking lot in north Houston. After checking eight or nine car doors, appellant found a car with an unlocked driver's side door and proceeded to enter the car. When Vacek saw appellant digging around inside the car, he approached appellant and asked what he was doing. Appellant exited the vehicle and began rambling incoherently to Vacek. An unidentified person called the police to report a suspicious person and Officer Z. Zopfi responded to the Food Town parking lot. Zopfi approached appellant and asked him for identification. Zopfi also asked appellant if he had any drugs or weapons on him. Appellant responded that he did not. Zopfi then asked if he could search appellant, and appellant gave his consent. Zopfi searched appellant's pants pocket. In the right coin pocket of appellant's pants, Zopfi found a small bag with a crystalline substance that a field test identified as methamphetamine, as well as two pills Zopfi identified as Xanax. Appellant told Zopfi that he did not "do meth" and that the meth was not his, but that the Xanax pills belonged to him. Appellant was charged with possession of a controlled substance, methamphetamine, in an amount less than one gram.

After jury selection, prior to trial on the merits, the trial judge notified attorneys for the defendant and the State that he had observed appellant speaking to two jurors in the lunchroom of the courthouse. The trial judge asked the attorneys if they agreed that a hearing should be held to question the jurors about what occurred in the lunchroom. Both the defense and the State agreed. The trial judge questioned appellant about his interaction with the jurors. The following exchange took place in open court, before the jury returned from its lunch break:

> THE COURT: What were y'all talking about down there?
>
> THE DEFENDANT: Oh, I was just passing by and I said, "Excuse me." That's it. We were all in the same line getting a burger, but I didn't say anything else.

2

THE COURT: Now that's not what I observed. I didn't observe—what I observed is them talking to you and laughing and carrying on. That's what I observed. That's what bothered me. I didn't see a situation where you just walked by them and said "excuse me."

THE DEFENDANT: Yes, sir. I was passing by and said, "Excuse me." That's it.

THE COURT: Did you say anything to them about this case?

THE DEFENDANT: No, I didn't. No sir.

The trial judge then asked the attorneys if they had any questions for appellant. One of the prosecutors said that she wanted to know exactly what appellant had said to the jurors. The trial judge again asked appellant what he said to the jurors in the lunchroom.

THE COURT: What did you say, sir?

THE DEFENDANT: I told them, "Excuse me, I'm trying to get through," because they were in my way, or whatever. I went to go get me a soda.

THE COURT: And that's all you said?

THE DEFENDANT: Uh-huh.

Another prosecutor continued the questioning, asking appellant again what appellant may have said to the jurors to make them laugh.

MR. WAKEFIELD [prosecutor]: All you said was, "Excuse me"? And the Judge had seen you—

THE DEFENDANT: I said, "Excuse me. How are y'all doing?"

MR. WAKEFIELD: You said, "Excuse me. How are y'all doing?"

THE DEFENDANT: Yes.

MR. WAKEFIELD: So you actually asked them how they were doing?

THE DEFENDANT. Yeah. I didn't even notice that they were jury girls. I didn't even notice that.

THE COURT: For the record, they had jury badges on.

3

MR. WAKEFIELD: They did have juror badges on.

At this time, appellant's trial counsel advised appellant to remain silent. The prosecutor, Wakefield, responded, "He's invoking his right to the Fifth. He doesn't want to talk anymore." The trial judge then asked for the jurors involved in the incident to be brought out to testify. Before he began questioning the jurors, the trial judge reiterated what he observed in the lunchroom.

> THE COURT: Just for the record, from what I observed, it appeared they were carrying on a conversation. It did not appear it was just a passing "excuse me, how are you doing."
>
> . . .
>
> THE COURT: I may be wrong about that, but I'm just saying from what I observed, it didn't appear to be that way.

The first juror questioned gave the following account of her interaction with appellant in the lunchroom:

> JUROR: He said something to us. I don't know what he said. I had said, "What," and did this (indicating). And then I had said to her, "Do you want to get a bag of chips?" And then that's when I turned away because I knew we weren't supposed to be talking to him. So I said "what" out of surprise that he had even spoke to us.
>
> THE COURT: Okay. Did he say anything to you about the case or —
>
> JUROR [1]: No.
>
> JUROR [2]: No.
>
> THE COURT: What did he say to you?
>
> JUROR [1]: I have no clue.
>
> JUROR [2]: Yeah. Actually, the noise around was pretty loud, so we didn't really hear anything that —

The trial judge again offered his version of the events:

> THE COURT: Okay. What I observed when I turned around, I saw him and it appeared to me that y'all were carrying on a conversation together and that's why I admonished him not to be talking to y'all.

4

The bailiff then informed the trial judge that there was another male juror who said that appellant had spoken to him about a drink in the lunchroom. Before the juror was questioned, appellant interjected to comment on that situation.

> THE DEFENDANT: I was in line and his Coke—I thought it was mine. I said, "Is that mine?" He was, like, no, it was his. I thought it was mine.
>
> . . .
>
> THE DEFENDANT: When we were in line, I was behind him and there was a Coke and —
>
> . . .
>
> THE COURT: Who else did you talk to?
>
> THE DEFENDANT: Those are the only two. I talked to a couple of people. I'm friendly. I mean, I talk to everybody. I didn't know it was going to be like escalated to this.

The juror corroborated this account of the interaction. After the juror's testimony, appellant's trial counsel moved for a mistrial.

> MR. CLAY: At this point, the defense would move for a mistrial for the very simple reason that it would appear to the three jury members that were brought out here that the defendant, Mr. Gonzales, did violate the Judge's instructions and it could taint his trial going forward.

The court denied the motion.

Appellant was convicted and sentenced by the jury to seven years in the Texas Department of Criminal Justice, Institutional Division. Appellant timely filed this appeal.

## Analysis

Appellant presents two issues on appeal: (1) that the trial court erred in denying appellant's motion for mistrial following the hearing on his potential improper contact with jurors; and (2) that trial counsel was ineffective in not presenting a defense consistent with counsel's opening statement. We discuss each

5

in turn.

## I. Motion for Mistrial

In his first issue, appellant argues that the trial court erred in denying his motion for mistrial for two reasons: (1) that the trial judge's questions and comments during the hearing regarding contact between jurors and appellant, displayed impermissible judicial bias; and (2) that appellant's Fifth Amendment right to remain silent was infringed by the trial judge's questioning during the hearing. As an initial matter, the State argues that the first point of error should not be considered because it is multifarious. We agree that the first point of error addresses two distinct legal arguments, but decline to deem the error waived and proceed with our analysis "in the interest of justice." *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) (citing Tex. R. App. P. 38.1)).

A mistrial is "an extreme remedy for prejudicial events that occur at trial and should be exceedingly uncommon." *Hudson v. State*, 179 S.W.3d 731, 738 (Tex. App.—Houston [14th Dist.] 2005, no pet.). We review the trial court's denial of appellant's motion for mistrial for abuse of discretion and determine whether the trial judge's conduct was "clearly calculated to inflame the minds of the jury and is of such a character to suggest the impossibility of withdrawing the impression produced on the minds of the jury." *Id.* (internal citations omitted).

## A. Judicial-Bias Argument

Appellant first argues that the trial judge should have granted a mistrial because the judge's own conduct "failed to safeguard [a]ppellant's presumption of innocence." By questioning appellant and expressing disagreement with this testimony, appellant argues, the trial judge was improperly acting as "an advocate and an adversary." The State again urges that this argument should not be considered because any error based on improper judicial conduct was not properly

6

preserved at trial. Appellant counters that his oral motion for mistrial suggested with sufficient clarity that it was the judge's misconduct that could "taint his trial going forward."

Appellant did not, through his motion for mistrial, object on the specific ground that the trial judge's comments had shown partiality, nor was it apparent from his argument what he believed had specifically caused him harm—the judge's statements or his own. Ordinarily, this lack of specificity would mean a failure to properly preserve error and would result in waiver. However, appellant argues that the trial judge's comments and questions undermined his presumption of innocence. We presume that such an attack on the presumption of innocence would constitute fundamental error, and nevertheless review the trial judge's actions. *See Latson v. State*, 440 S.W.3d 119, 121 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Because the trial court's comments and questions did not indicate that appellant was guilty of the charged crime of possession of methamphetamine or apply to the specific facts of the case, they did not taint appellant's presumption of innocence. *Id.* at 121. Appellant cites no Texas cases in which a court has held that the trial judge's conduct with respect to a hearing on a matter unrelated to the trial on the merits amounted to an attack on the presumption of innocence. Appellant relies only on *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000) (plurality op.), for the proposition that the trial court engaged in misconduct. However, *Blue* is not binding precedent. *Unkart v. State*, 400 S.W.3d 94, 101 (Tex. Crim. App. 2013); *Latson*, 440 S.W.3d at 121. Nor is *Blue* factually similar. In *Blue*, the trial judge disclosed to the jury as part of his instructions and comments during voir dire that the defendant had been considering a plea agreement. *Blue*, 41 S.W.3d at 130. The trial judge also stated that he would

"prefer the defendant to plead" in order to save time. *Id.* A plurality of the Court of Criminal Appeals concluded that this statement tainted the presumption of innocence because it suggested to the jury that the defendant was likely guilty or that the judge knew something about the guilt of the defendant that the jury did not. *Id.* at 132.

Unlike in *Blue*, the trial judge's statements in this case did not convey any knowledge or opinion that appellant was guilty of the charged crime—possession of methamphetamine. While the trial judge's bias toward his own version of appellant's interaction with the jurors—that they were "laughing and carrying on"—was apparent throughout the hearing, the judge's comments did not "bear on the presumption of innocence or vitiate the impartiality of the jury." *Ganther v. State*, 187 S.W.3d 641, 650 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). In fact, all parties aside from the trial judge—appellant, the State, and the jurors involved—agreed that appellant's encounter with the jurors in the lunchroom was not problematic. Although we consider it ill-advised for the trial judge to have become a fact witness in this particular proceeding, we hold that the judge's actions did not rise to a level that tainted appellant's presumption of innocence.[1]

## B. Fifth Amendment Right to Remain Silent

Appellant next argues that, despite not specifically invoking the Fifth Amendment during the hearing regarding contact between jurors and appellant, the trial court should have granted a mistrial because the hearing violated his right to

---

[1] The Texas Rules of Evidence expressly prohibit a presiding judge from testifying as a witness at trial. Tex. R. Evid. 605. Where, as here, the presiding judge becomes a fact witness in a proceeding prior to the trial on the merits, outside the presence of the entire jury panel, that does not bear on the defendant's guilt, the law is undeveloped. For the reasons articulated above, we decline to hold that Rule 605's express prohibition on judicial testimony encompasses this unique situation, but we nevertheless emphasize the imprudent nature of the trial judge's comments.

remain silent.

"In order to preserve an issue for appeal, a timely objection must be made that states the specific ground of objection, if the specific ground was not apparent from the context." *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). Appellant orally moved for mistrial because it may have appeared to the three members of the jury present at the hearing that he did not follow the trial judge's instructions regarding contact with the jurors. Appellant did not articulate or allude to what specific legal error precipitated the alleged taint. While "'no hyper-technical or formalistic use of words or phrases' [was] required in order for an objection to preserve an error," there is no indication from the record that appellant invoked his Fifth Amendment right to remain silent. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (quoting *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009)). In fact, appellant volunteered potentially inculpatory information—with respect to the collateral matter of improper contact with the jury—without being directly questioned. Further, the only mention of the Fifth Amendment right to remain silent came from the prosecution, not from appellant or his lawyer. It is not apparent from the record that appellant attempted to invoke the Fifth Amendment either during the hearing or in his post-hearing motion for mistrial. We conclude that appellant failed to properly object and the error was forfeited. *See Clark*, 365 S.W.3d at 339.

Concluding there is no reversible error on the first ground and no preservation of error on the second, we overrule appellant's first issue.

## II. Ineffective Assistance of Counsel Claim

In his second issue, appellant asserts that he received ineffective assistance of counsel. Appellant specifically argues that trial counsel was ineffective because the defense that trial counsel presented to the jury did not conform to counsel's

opening statement. In his opening statement, trial counsel asserted that appellant did not knowingly possess methamphetamine because, at the time of arrest, he was wearing pants that were not his. Trial counsel said:

> Now, what the evidence is going to show is when he left the next morning, he did not put on his clothing. His clothing was filthy from being soiled by vomiting on himself the night before. So he put on other clothes that were in the house, not clothes that were his. The evidence is going to show he took two of his prescription Xanax and put them in his pocket and left when his girlfriend asked him to.

Despite making this statement about what the evidence was going to show, trial counsel did not call appellant or appellant's girlfriend to testify, nor did he offer any other evidence to show that the pants did not belong to appellant.

In order to demonstrate that his trial counsel was constitutionally ineffective, appellant must show: (1) that counsel's performance was deficient; and (2) that this deficient performance prejudiced appellant's defense. *Strickland v. Washington*, 466 U.S. 687 (1984). Counsel's performance is deficient if it falls "below an objective standard of reasonableness" as determined by "prevailing professional norms." *Id.* at 688. In order to demonstrate prejudice, an appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

It is not apparent from the record on appeal why trial counsel chose not to call any witnesses or put on any other evidence to establish the defensive theory laid out in his opening statement. Trial counsel should "ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective."

10

*Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (internal citation omitted). "In the majority of instances, the record on direct appeal is simply underdeveloped and cannot adequately reflect the failings of trial counsel." *Thompson*, 9 S.W.3d at 813–14. Where, as here, the allegation of ineffectiveness centers on an error of omission rather than a commission that can be plainly found in the trial record, "collateral attack may be the vehicle by which a thorough and detailed examination of alleged ineffectiveness may be developed and spread upon a record." *Id.* at 814. Without any detailed examination of trial counsel's actions, it is not apparent that trial counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). We therefore hold that the record in this case is insufficient to demonstrate whether trial counsel's performance was deficient. We overrule appellant's second issue.

## Conclusion

Having overruled both of appellant's issues, we affirm.


/s/     Marc W. Brown
        Justice


Panel consists of Chief Justice Frost and Justices McCally and Brown (Frost, C.J., concurring).
Publish — TEX. R. APP. P. 47.2(b).

11